728 F.2d 582
 4 Soc.Sec.Rep.Ser. 192, Unempl.Ins.Rep. CCH 15,169
Giacomo FERRARIS, Plaintiff-Appellant,
v.
Margaret M. HECKLER, Secretary of the Department of Health
and Human Services of the United States, Defendant-Appellee.
 No. 513, Docket 83-6246.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 5, 1983.
Decided Feb. 22, 1984.
 
 Stanley F. Meltzer, New York City (Meltzer & Fishman, New York City, on the brief), for plaintiff-appellant.
 William B. Peterson, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., and Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for defendant-appellee.
 Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Giacomo Ferraris commenced this action in the Eastern District of New York pursuant to Sec. 205(g) of the Social Security Act (Act) as amended, 42 U.S.C. Sec. 405(g) (Supp. V 1981), seeking review of a final decision by the Secretary of Health and Human Services (Secretary) which denied Ferraris' application for disability insurance benefits. The district court, Henry Bramwell, District Judge, after hearing argument on cross motions for judgment on the pleadings, rendered a decision in open court on June 17, 1983, granting the Secretary's motion, denying Ferraris' motion, affirming the Secretary's decision and dismissing the complaint. From the judgment entered on the court's decision, Ferraris has taken this appeal. We reverse and remand.
 
 I.
 
 2
 Ferraris is a fifty-four year old male who was born in Italy. He is presently a naturalized citizen who has lived in the United States since 1954.
 
 
 3
 He has at best an eighth grade level of education. He is literate in Italian and can read some English. He is sufficiently proficient in spoken English that he did not require at his hearing the assistance of the Italian interpreter who had been provided for him. His primary work experience in the United States has been that of a waiter and maitre d'.
 
 
 4
 On June 9, 1976, Ferraris was involved in an automobile accident in which he injured his back. He did not seek immediate medical treatment and reported to work the following day. Some two weeks later, after consulting with his family physician, he was examined by Dr. Irving Liebman, an orthopedic surgeon. On the basis of x-rays taken at that time, Dr. Liebman diagnosed a herniated lumbar disc at level L5-S1. Ferraris was hospitalized and put in traction for two weeks.
 
 
 5
 He returned to work for approximately ten days in August 1976 but found it too painful to continue. He obtained a part-time job in early September 1976, working four hours a day. He continued at that job until October 1977. He has not been employed since.
 
 
 6
 In October 1977, Ferraris again was hospitalized for two weeks. A myelogram disclosed a second herniated lumbar disc at level L4-L5. Dr. Liebman recommended either a laminectomy or fusion. Ferraris refused surgery. He continued to visit Dr. Liebman approximately once a week from that time to the date of his hearing, receiving diathermy treatment for symptomatic relief of pain.
 
 
 7
 Ferraris complains of constant lower back pain radiating to his legs. This restricts him from standing, sitting or walking for any prolonged periods of time. He claims that because of the pain the longest he can sit at any one time without standing up is two hours, and then only if he shifts in his seat every fifteen minutes. Despite his restrictions, he does some cooking and cleaning around the house. He avoids lifting any objects weighing more than a few pounds. He drives his automobile on some occasions, but is not confident of his driving ability because of his pain. He will ride in a bus but avoids the subway.
 
 
 8
 Ferraris first filed his application for disability insurance benefits on January 13, 1978. As subsequently amended, his application claimed disability from October 9, 1977. His claim was denied initially on March 27, 1978. Reconsideration was denied on December 14, 1978. On January 26, 1979, he requested a hearing de novo before an Administrative Law Judge (ALJ). He received no response to that request.
 
 
 9
 On September 27, 1979, he commenced his first action in the Eastern District of New York. The case was returned to the Social Security Administration by stipulation of the parties dated March 18, 1980. A hearing was held before an ALJ on May 21, 1980. In a decision dated September 30, 1980, the ALJ determined that Ferraris was not disabled within the meaning of the Act and therefore was not eligible for disability benefits. The Appeals Council denied Ferraris' petition for review on December 30, 1980, thereby making the ALJ's decision the final decision of the Secretary.
 
 
 10
 Ferraris thereupon commenced the instant action in the Eastern District of New York on February 6, 1981. On June 18, 1982, he moved for judgment on the pleadings. Action on his motion was held in abeyance pending the Supreme Court's decision in Heckler v. Campbell, --- U.S. ----, 103 S.Ct. 1952 (1983). After Campbell was decided, the Secretary cross-moved for judgment on the pleadings. After hearing oral argument on June 17, 1983, the court disposed of the motions as stated above, holding that the Secretary's determination was supported by substantial evidence in the record and dismissing Ferraris' complaint.
 
 II.
 
 11
 We turn directly to the reasons for our reversal of the judgment of the district court and remand of the case for further proceedings.
 
 
 12
 (A) Controlling Statute And Regulations.
 
 
 13
 The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A) (1976 & Supp. V 1981). The Act empowers the Secretary to establish rules and procedures for the determination of disability, id. Sec. 405(a), and the Secretary is directed to include findings of fact in any decision which is in whole or in part unfavorable to the claimant. Id. Sec. 405(b)(1).
 
 
 14
 The Secretary has promulgated regulations governing most disability determinations. The burden is upon the claimant to show that he suffers from a severe impairment that renders him disabled. Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2 Cir.1983); 20 C.F.R. Sec. 404.1520 (1983). Several scenarios may occur. First, if the claimant is engaged in any substantial gainful employment, or is not afflicted with a severe impairment, that ends the inquiry and the claimant is determined not to be disabled. Second, if the claimant suffers from an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1, that again ends the inquiry and the claimant is determined to be disabled. Third--the situation in the instant case--if the claimant suffers from a severe impairment but one not listed as presumptively disabling, he must show that he is unable to continue his past relevant vocational work. If successful in making that showing, the Secretary then, in order to justify denying benefits, must show that the claimant may perform some less demanding, but gainful, employment. Campbell, supra, --- U.S. at ----, 103 S.Ct. at 1954.
 
 
 15
 In the course of determining whether the claimant may perform other substantial, gainful employment, the Secretary is directed to evaluate the claimant on the basis of four factors identified by Congress. The four factors are age, education, physical ability and work experience. 42 U.S.C. Sec. 423(d)(2)(A). The Secretary has promulgated guidelines--the so-called "Grid Regulations"--20 C.F.R. Part 404, subpart P, Appendix 2 (1983), which normally require a conclusion of either disabled or not disabled based on the combination of these four factors. These guidelines recently were upheld as valid by the Supreme Court in Campbell, supra. The disputed issues on this appeal arise from the ALJ's findings in connection with Ferraris' physical ability and work skills.
 
 
 16
 (B) Findings As To Physical Ability Or Residual Work Capacity.
 
 
 17
 In determining the claimant's physical ability, or residual work capacity, the Secretary must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. Carroll, supra, 705 F.2d at 642; Parker v. Harris, 626 F.2d 225, 231 (2 Cir.1980); Marcus v. Califano, 615 F.2d 23, 26 n. 2 (2 Cir.1979). In particular, the Secretary is required to give considerable--and if uncontradicted, conclusive--weight to the expert opinions of the claimant's own treating physicians. Donato v. Secretary of the Department of Health and Human Services of the United States, 721 F.2d 414, 419 (2 Cir.1983); Carroll, supra, 705 F.2d at 642; Aubeuf v. Schweiker, 649 F.2d 107, 112 (2 Cir.1981); Parker, supra, 626 F.2d at 231. Moreover, in making any determination as to a claimant's disability, the Secretary must explain what physical functions the claimant is capable of performing. Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir.1960); Deutsch v. Harris, 511 F.Supp. 244, 249 (S.D.N.Y.1981).
 
 
 18
 In Ferraris' case, the ALJ heard testimony of Ferraris himself, his wife, and his treating physician, Dr. Liebman. In addition, reports were submitted by four consulting physicians. The ALJ set forth extensively the evidence he considered, which may be summarized briefly as follows.
 
 
 19
 According to Dr. Liebman, the treating physician, his examinations revealed spasm throughout the lumbosacral spine with significant tenderness and restriction of movement. He estimated that Ferraris could walk only one to two blocks before resting, after which he possibly could walk another one to two blocks. Standing was limited to one and a half hour periods, separated by half hour rest periods. Sitting in one place was limited to one to two hours, followed by twenty minutes of movement before he could sit again. He could lift no more than one or two pounds at a time, and that only occasionally. Ferraris' ability to bend, according to Dr. Liebman, was almost non-existent.
 
 
 20
 In March 1978, Ferraris was examined by Dr. Irwin Nelson, a consulting physician designated by the Secretary. In his opinion Ferraris could sit, stand, walk, push and pull within "normal limits" for his age, provided he wore a lumbosacral support. Dr. Nelson did not elaborate on what are the "normal limits" for Ferraris' age.
 
 
 21
 In October 1978, Ferraris was examined by another consulting physician, Dr. Irwin Miller. Dr. Miller found mild restrictions of movement and concluded that Ferraris could walk for eight to ten blocks, stand for half hour periods at a time, lift up to five pounds, sit for "prolonged periods of time", and bend only infrequently. He did not specify what constitutes "prolonged periods of time".
 
 
 22
 After Ferraris' hearing on May 21, 1980 before the ALJ, the latter arranged for consultative examinations by a neurologist and an orthopedist. Dr. Leon Bernstein, the orthopedist, was of the opinion that, during the course of an eight hour work day, Ferraris could sit, stand and walk for three hours at a time; that his ability to lift was limited to five pounds; and that bending, climbing and reaching of any sort could be done only occasionally. Dr. Lewis Wiener, the neurologist, after examining Ferraris, concluded that he could sit, stand and walk for two hours at a time during the course of an eight hour work day, could lift up to ten pounds frequently, and could bend only occasionally.
 
 
 23
 Based on this record, the ALJ concluded that movement was only mildly restricted and that, despite Dr. Miller's finding to the contrary, apparently no muscle atrophy had occurred. The ALJ stated that the only contradictory medical findings were with respect to tenderness and spasm in the lumbar region. He stated that only Dr. Liebman, the treating physician, had discovered these symptoms and concluded that it was highly improbable that Ferraris was asymptomatic on each of the four occasions he was examined by consulting physicians. The ALJ also explained at length why he discredited any claims of debilitating pain by Ferraris. Among his reasons were the lack of atrophy, Ferraris' ability to carry out normal functions, and, of "most significance", the absence of all but the most conservative treatment for pain which consisted of a dosage of Darvon once every couple of weeks.[1]
 
 Finally, the ALJ concluded that
 
 24
 "Although claimant has suffered from the herniated discs at L4-5 and L5-S1, nevertheless the relatively minor clinical findings and the finding made by the undersigned that claimant does not suffer from any significant pain, and based upon the consensus of opinions expressed by the consulting physicians as to claimant's residual functional capacity, the Administrative Law Judge determines that claimant does suffer from a severe impairment which significantly affects his ability to perform basic work-related functions but that he has the maximum sustained work capacity to engage in sedentary work activity, as that term is defined in Section 404.1510 of the Social Security Regulations. Claimant's major work experience as a waiter and maitre d' required him to supervise several people and also encompassed other duties which may be considered of at least a semi-skilled level and which may be transferred to a wide variety of semi-skilled occupations in the food service business and in sales work."
 
 
 25
 The ALJ then relied on Rule 201.11 of the Grid Regulations, 20 C.F.R. Part 404, subpart P, Appendix 2, to reach the conclusion that Ferraris was not disabled.
 
 
 26
 We hold that, on the facts of this case, the ALJ failed to perform all of the duties required of him. In particular, his findings on Ferraris' residual functional capacity to engage in sedentary work are wholly insufficient. His findings in this respect were simply that Ferraris could not do any prolonged standing or frequent lifting of more than 10 pounds. From that, the ALJ found in a conclusory manner that Ferraris could do sedentary work as that is defined in the Regulations.[2] Based on the entire record before the ALJ, these findings were not sufficient.
 
 
 27
 As is apparent from the ample evidence adduced on the issue, Ferraris' ability to sit for prolonged periods of time was the key to the ultimate determination of his disability. Each physician who examined him expressed an opinion on the issue. And yet, aside from the ALJ's vague reference to a "consensus" among the consulting physicians regarding Ferraris' residual functional capacity, no other allusion to Ferraris' ability to sit was made. Moreover, there was no consensus in the first place. The four consulting physicians expressed opinions, respectively, that Ferraris could sit for (1) normal limits for his age, with a back brace; (2) prolonged periods of time; (3) three out of eight hours; and (4) two hours in an eight hour work day. But, of more significance, the ALJ ignored the opinion of Dr. Liebman--the treating physician--that Ferraris could sit for only one or two hours at a time.
 
 
 28
 We have held that the concept of sedentary work contemplates substantial sitting. Carroll, supra, 705 F.2d at 643. Moreover, alternating between sitting and standing may not be within the concept of sedentary work. Deutsch, supra, 511 F.Supp. at 249. On the basis of the ALJ's insufficient findings here, we cannot determine whether his conclusory statement that Ferraris could carry out sedentary work is supported by substantial evidence. We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, Miles v. Harris, 645 F.2d 122, 124 (2 Cir.1981), but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence. Treadwell v. Schweiker, 698 F.2d 137, 142 (2 Cir.1983) ("the propriety of agency action must be evaluated on the basis of stated reasons."). On remand, the ALJ should make specific findings of exactly what Ferraris can do, especially with reference to his ability to sit and for how long. The ALJ then should determine, based on such specific findings, whether Ferraris has the residual functional capacity to perform sedentary work, bearing in mind what has developed as the concept of sedentary work.[3] In making this determination, the ALJ should consider the claimant's then current condition, keeping in mind Rules 200.00(a), (b) of the Grid Regulations as to "borderline" cases.
 
 
 29
 (C) Findings As To Work Skills And Their Transferability.
 
 
 30
 For substantially similar reasons, we further direct that the ALJ make more detailed findings regarding Ferraris' skills, if any, and their transferability.
 
 
 31
 A finding as to transferable skills is necessary before the Secretary can apply Rule 201.11. In his opinion below, the ALJ summarily stated that Ferraris' experience as a waiter and maitre d' required him to supervise others and encompassed other semi-skilled "duties" which can be transferred to other food service industry occupations. On facts strikingly similar to those of the instant case, the Tenth Circuit held that the past experience as a supervisor may not necessarily indicate the possession of skills, or that they are transferable. Winn v. Schweiker, 711 F.2d 946 (10 Cir.1983). The ALJ's findings on this issue in the instant case are not sufficiently specific. He did not refer to any evidence upon which he based his finding on this issue. We are at a loss to understand how the ALJ could have arrived at his conclusion. In our review of the hearing transcript, we have found only brief and vague references to Ferraris' duties as a waiter and maitre d'. These are found in Dr. Liebman's and Ferraris' testimony. The ALJ did not--and perhaps could not--make any detailed findings based on this record regarding Ferraris' acquired skills or how they might be transferable. See Decker v. Harris, 647 F.2d 291, 295-96 (2 Cir.1981). Since we cannot fathom the ALJ's rationale for his conclusion of transferable skills based on the evidence in the instant record, Berry v. Schweiker, 675 F.2d 464, 469 (2 Cir.1982) (per curiam), we direct that the ALJ on remand make more explicit his findings regarding Ferraris' skills and their transferability.[4]
 
 
 32
 Accordingly, the judgment of the district court is reversed and the case is remanded to the district court with directions to remand to the Secretary for more detailed findings with respect to Ferraris' residual work capacity, his work skills and their transferability.
 
 
 33
 Six years have elapsed since Ferraris first applied for the disability benefits to which he claims he is entitled. We order that on remand proceedings be expedited at every level. The mandate of this Court shall issue forthwith.
 
 
 34
 Costs to appellant in this Court.
 
 
 35
 Reversed and remanded.
 
 VAN GRAAFEILAND, Circuit Judge, concurring:
 
 36
 I concur in the result.
 
 
 
 [1]
 We accept, as supported by substantial evidence and based upon his own observations of Ferraris at the hearing, the ALJ's findings on the extent of pain experienced by Ferraris. Furthermore, we reject Ferraris' argument that Dr. Liebman's findings of pain were uncontradicted. None of the consulting physicians reported finding any tenderness. This is a significant contradiction. Dr. Liebman's findings of pain and tenderness therefore were not binding on the ALJ
 
 
 [2]
 Sedentary work is defined as follows:
 "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."
 
 
 [20]
 C.F.R. Sec. 404.1567(a) (1983)
 
 
 [3]
 The Secretary has elaborated on the definition of sedentary work in the regulations in a recent Ruling, SSR 83-10, Titles II and XVI: Determining Capability to do Other Work--The Medical-Vocational Rules of Appendix 2, 1A Unempl.Ins.Rep. (CCH) p 14,531, at 1999-19. In that Ruling, the Secretary suggests that sedentary work generally will involve sitting for six hours out of an eight hour work day. While these guidelines were made effective retroactive to February 1979, they are not binding on the ALJ because the language of the Ruling is merely precatory. We do suggest, however, that the ALJ, when determining whether Ferraris is capable of sedentary work, take into consideration the Ruling referred to above, as well as Wright v. Secretary of the Department of Health and Human Services, No. Civ. 81-3963 (E.D.N.Y. July 12, 1983) (six hours sitting required for sedentary work), and cases cited therein. But see Delamater v. Schweiker, 721 F.2d 50 (2 Cir.1983) (per curiam), in which a finding that the applicant could perform sedentary work because he could sit for four hours was upheld. The standard for sedentary work, however, was not challenged on appeal in the latter case
 
 
 [4]
 A certain degree of explicitness is suggested by SSR 82-41, [Mar. 1982-Feb. 1983 Transfer Binder] Unempl.Ins.Rep. (CCH) p 14,168 (July 1982), which we assume the ALJ will bear in mind on remand. We leave to the discretion of the ALJ whether another hearing is required to develop more evidence on the issues dealt with in the instant opinion