**Rosita PAGAN, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 84 Civ. 448 (RLC).**

United States District Court, S.D. New York.

April 1, 1985.

Binder and Binder, Hauppauge, N.Y., for plaintiff; Charles E. Binder, Hauppauge, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Neal S. Mann, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Attorney-Region II, Leonora Pennell Baker, Special Asst. Regional Atty., Dept. of Health and Human Services, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an action brought by plaintiff under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits.

---

**1.** The abbreviation "Tr." is a reference to the page number in the administrative record filed

Plaintiff Rosita Pagan filed an application for benefits on September 16, 1982, based on disability because of diabetes, hypertension, phlebitis and arteriosclerosis. She alleged an onset date of April 29, 1982. The application was denied initially and on reconsideration. A hearing was held on May 23, 1983, and on June 15, 1983, the Administrative Law Judge (ALJ) found that the plaintiff was not disabled. The plaintiff then submitted additional medical evidence to the Appeals Council, which considered the new evidence, but adopted the decision of the ALJ as the Secretary's final determination.

Pagan was born on July 26, 1923, and was fifty-nine years old at the time of her hearing. She has a seventh grade education, obtained in Puerto Rico, and is illiterate in English. Her past relevant work is that of a laborer in an electronics factory, where she worked for twenty-eight years before the onset of her alleged disability. Her job was to assemble pieces of electronic components, using an electric machine. According to Pagan, the job required her to sit for all eight hours of the working day. (Tr. 77).[1]

The medical evidence in the record may be summarized as follows:

On April 29, 1982, Pagan became ill at work, and was taken to Prospect Hospital where she was admitted complaining of chills, fever, and generalized aches and pains. (Tr. 8, 33, 90). The hospital report shows a two to three-year history of diabetes and a six-year history of hypertension for which she takes the drugs diabinese and aldomet. The report also notes a history of thrombophlebitis (development of solid masses of blood constituents in the veins, causing inflammation) of the right leg, with intermittent edema, though with good pulsation bilaterally. (Tr. 90). Pagan was treated with bed rest, aldomet and insulin, and discharged ten days later. Upon discharge, the attending physician, Dr. Manuel Vazquez, diagnosed viremia

as part of defendant's answer.

(presence of a virus in the bloodstream), diabetes, hypertensive arteriosclerosis, and chronic deep thrombophlebitis. (*Id.*).

By letter dated September 10, 1982, Dr. Vazquez stated that he had been treating Pagan since December, 1978, for diabetes, arteriosclerosis, hypertension and phlebitis of the right leg. Dr. Vazquez said that plaintiff's "condition had been intermittently worse requiring hospitalization on several occasions[,]" and opined that she was "in no condition to work." (Tr. 92).

Dr. Vazquez submitted additional medical reports on February 4, 1983 (Tr. 100), May 17, 1983 (Tr. 107), and July 23, 1983 (Tr. 7), indicating that Pagan continued to suffer from diabetes, hypertensive arteriosclerosis, and phlebitis of the right leg. Dr. Vazquez assessed Pagan as physically capable of occasionally lifting or carrying up to twenty-five pounds, and able to perform finger and hand manipulations without limitation. He found her able to sit for four hours and to stand or walk for two hours each during the course of an eight-hour day, but he added that she could sit, stand, or walk for only one hour at a time. In the margin of the reporting form, Dr. Vazquez noted that Pagan's "capacity changes with her symptoms[,]" and at the bottom of the page he stated that her "condition is intermittently worse. At times she is completely disabled." (Tr. 7).

At the government's request, Pagan was examined by Dr. S. Anand on November 16, 1982. Pagan complained of headaches, dizziness, shortness of breath, chest pain, and arthritis. The physical examination was normal in most respects. However, there was plus-two pedal edema[2] without cyanosis, clubbing or varicose veins, and pain on bending of the knees. (Tr. 94). In addition, X-rays of Pagan's chest showed enlargement of the heart and minimal uncoiling of the aorta. (Tr. 96). The impression of the radiologist, Dr. H. Rabiner, was cardiomegaly. (*Id.*). Dr. Anand diagnosed plaintiff as suffering from diabetes, hypertension, arthritis and chest pain not secondary to atherosclerotic heart disease. (Tr. 95).

Dr. Robert Small, a board-certified internist, examined plaintiff on August 3, 1983, at the request of plaintiff's counsel. Plaintiff complained of chest congestion, shortness of breath and an inability to climb stairs. (Tr. 8). The physical examination was unremarkable except for blood pressure of 160/102 and edema of both legs. (*Id.*). Dr. Small found that plaintiff was suffering from chronic painful phlebitis of both legs, which rendered her "permanently and totally disabled from any gainful employment of any type[,]" complicated by diabetes and severe high blood pressure. (*Id.*).

At the hearing, Pagan testified that she lives with her husband in a second-story walk-up apartment in the Bronx, New York. (Tr. 37–38). Her daily activities include doing the household cooking, dusting furniture, making the beds, doing the dishes and watching television. (*Id.*). Her husband helps her with the shopping and cleaning (Tr. 37). Plaintiff lies down and elevates her leg two or three times a day for one or two hours at a time (Tr. 35, 39). She socializes with friends and relatives who occasionally come to visit (Tr. 40).

Pagan testified that her leg is swollen and painful (Tr. 34) and that she suffers constant pain in her back (Tr. 36–37), and pain in her chest when her blood pressure rises, which happens "[a]lmost all the time[, o]n a monthly basis." (Tr. 35). She said she cannot take buses or subways because she has difficulty standing and walking. She estimated that she can stand for less than half an hour (Tr. 35) and can sit for up to one hour (Tr. 36). She said that she climbs the stairs to her apartment about three times a day. (Tr. 38).

In his decision, the ALJ concluded that plaintiff's impairments did not prevent her

---

**2.** "Plus-two" is a measure of interstitial fluid pressure, on a scale of one to four. "One-plus edema means edema that is barely detectable, and 4+ edema means edema in which the limbs are swollen to diameters 1.5 to 2 times normal." A. Guyton, Textbook of Medical Physiology 376 (6th ed. 1981).

from returning to her past relevant work as an assembler, and therefore that plaintiff was not disabled under the terms of the Social Security Act. Specifically, the ALJ found that though Pagan suffered from severe hypertension, there was no evidence of phlebitis, and her allegations of severe and debilitating pain were exaggerated (Tr. 16–17).

## DISCUSSION

■ The Secretary's findings of fact are conclusive if supported by substantial evidence.[3] 42 U.S.C. § 405(g); *Richard v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In this case, the Secretary found that there was no evidence that Pagan suffered from phlebitis. She reached this conclusion despite the opinion of the treating physician, Dr. Vazquez, that Pagan suffered from deep thrombophlebitis of the right leg, with edema and pain. In cases where the claimant's treating physician has expressed an opinion, "the Secretary is required to give considerable—and if uncontradicted, conclusive—weight" to that opinion. *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir.1984) (citations omitted).

■ There is no substantial medical evidence to contradict Dr. Vazquez's opinion and to support the Secretary's finding of no phlebitis. The Secretary claims to have relied on the findings of the consulting physician, Dr. Anand, who did not mention phlebitis in his[4] report. But Dr. Anand's findings, though not identical to Dr. Vazquez's, do not contradict Dr. Vazquez's, and certainly do not constitute substantial evidence of no phlebitis. Like Dr. Vazquez, Dr. Anand diagnosed pedal edema (Tr. 94); edema of the leg can be a symptom of phlebitis. *See* Harrison's Principles of Internal Medicine 48, 170 (R. Petersdorf, R. Adams, E. Braunwald, K. Is-

selbacher, J. Martin, J. Wilson eds. 10th ed. 1983). The other medical evidence in the record directly contradicts the Secretary's findings: notwithstanding a notation of good pulsation bilaterally, the records of Prospect Hospital note a history of thrombophlebitis with edema (Tr. 90), and Dr. Small, the internist, diagnosed chronic painful phlebitis of both legs, rendering Pagan completely disabled. (Tr. 8).

■ The non-medical evidence in the record also does not constitute substantial evidence supporting the Secretary. Pagan testified that in the course of a day she does some light chores around the house unassisted, climbs the flight of stairs to her apartment three times, and shops and cleans with her husband's help. (Tr. 37–38). She also said that she needs to lie down and elevate her leg two or three times a day for one or two hours at a time, and that she cannot use buses or subways because she has difficulty standing and walking (Tr. 35, 39). Though this testimony demonstrates that Pagan was not "completely helpless or unable to function," *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n. 6 (2d Cir.1972), it does not constitute substantial evidence of no phlebitis. On the contrary, Pagan's limited ability to get around and her need periodically to elevate her leg support Dr. Vazquez's findings. Dr. Vazquez's diagnosis of phlebitis is therefore uncontradicted, and binding on the Secretary.

■ The Secretary's ultimate finding—that Pagan could return to her old job—is likewise not supported by substantial evidence. Pagan reported that her old job required her to sit for all eight hours of the working day. (Tr. 77). The Secretary did not say that she disbelieved Pagan's report on this score; nor is there any reason to disbelieve Pagan. Dr. Vazquez as-

---

**3.** Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison*

*Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

**4.** The record does not make clear whether Dr. Anand is a man or woman. The masculine pronoun is used for convenience only.

sessed Pagan as able to sit for no more than four hours out of eight and to walk or sit for two hours each out of eight, and added that Pagan could neither sit, stand nor walk for more than one hour at a time. No other physician assessed Pagan's residual capacities. Pagan herself testified that she could sit for no more than an hour and stand for no more than thirty minutes. She also stated that though she is able to do some chores and climb stairs, she must lie down and elevate her leg two or three times daily for one or two hours at a time. In light of Dr. Vazquez's uncontradicted assessment, which binds the Secretary,[5] and Pagan's own testimony, the Secretary's finding that Pagan could return to a job that would require her to sit for all eight hours of her workday is simply mystifying.

Having found the Secretary's findings that Pagan did not suffer from phlebitis and that Pagan could return to her old job to be unsupported by substantial evidence, the court could end its review here. However, the court finds that the Secretary committed other reversible errors in Pagan's case. Rather than see the Secretary repeat those errors on remand, the court addresses those errors now.

The Second Circuit has established an analytical framework that ALJ's must follow in assessing disability: "Initially, the ALJ should see whether the treating physician has determined that the claimant is disabled. He should then examine the record for conflicting evidence. Upon finding conflicting evidence, he should compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence. He should do so with the recognition that the treating physician's determination is generally 'entitled to more weight than that of a doctor who has only seen the claimant once....'" *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984) (citations omitted).

The ALJ in the instant case did not follow the framework. Instead, the ALJ assumed, *ab initio,* that the report of the treating physician deserved less weight than that of the consultative physician (who had seen the claimant only once) because the former "contained no clinical findings from which measure [sic] the degree of claimant's impairment." (Tr. 16). This is precisely the position taken by the ALJ in *Bluvband v. Heckler, supra.* There, the Second Circuit reversed and remanded the case, holding that "[i]t was improper for the ALJ to disregard the ... framework by requiring from the start that [the treating physician's] expert opinion be accompanied by concrete and detailed clinical support." *Id.* at 893. *See also Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 65 (2d Cir. 1980) ("there is no requirement that medical testimony 'be supported by "objective" clinical or laboratory findings,'") *citing Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir. 1975).[6] In the instant case, the Secretary is instructed on remand to follow the analytical framework and to accord the treating physician's report "considerable—and

---

5. The Secretary, however, is not bound by Dr. Vazquez's use of the word "disabled." Because "disability" is a term of art with a narrow definition under the Social Security Act, the responsibility for deciding the ultimate issue of disability is the Secretary's. 20 C.F.R. § 404.1527; *Kaminski v. Califano,* 465 F.Supp. 367, 379 (S.D. N.Y.) (Weinfeld, J.), *aff'd mem. sub nom. Kaminski v. Department of Health, Education and Welfare,* 614 F.2d 1288 (2d Cir.1979), *citing Hofacker v. Weinberger,* 382 F.Supp. 572, 576 (S.D. N.Y.1974) (Carter, J.).

6. Even if the Secretary were free to discount a treating physician's opinion simply because the opinion was unaccompanied by clinical findings, it would have been error for the Secretary to do so in the instant case. The record shows unambiguously that Dr. Vazquez's opinion *was* supported by clinical and laboratory findings. Dr. Vazquez submitted Pagan's hospital discharge summary, which included her history, the physical findings on admission (including demeanor; body temperature; ear, nose and throat examination; chest and heart examination; ventricular rate; examination of the abdomen and extremities), as well as diagnostic tests (blood sugar, urine analysis, and electrocardiogram). Dr. Vazquez's May 17, 1983 update noted a positive Homan's sign on the right—a clinical finding noting discomfort behind the right knee on forced dorsiflexion of the foot, signaling thrombosis of the leg. (Tr. 27).

if uncontradicted, conclusive—weight." *Ferraris v. Heckler, supra,* 728 F.2d at 585.

██ The Secretary also erred in her evaluation of Pagan's allegations of pain. The ALJ is certainly permitted to assess the credibility of an individual's allegations of pain and to make an independent judgment; however, "this independent judgment should be arrived at in light of *all* the evidence regarding the extent of the pain." *Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983) (emphasis in original) (citations omitted).

██ In this case, Pagan complained of pain in her back, chest and legs. In his evaluation of Pagan's allegations, however, the ALJ considered only leg pain, and disregarded entirely the claims of chest and back pain. Clearly, the ALJ did not fulfill his obligation to consider *all* the evidence. Moreover, in assessing Pagan's claim of leg pain, the ALJ based his opinion that the pain was not disabling on the fact that Dr. Anand's examination indicated that there was a full range of motion in all major points including the knees. The ALJ also noted his own observations that Pagan did not appear to be in pain during her hearing and that her activities were "not those of a person who suffers extreme pain." (Tr. 16). He apparently did not rely at all upon the fact that the cause of the claimant's leg pain, according to Dr. Vazquez, is recurrent edema of the right leg due to deep thrombophlebitis. (Tr. 107). Dr. Small also linked Pagan's leg pain to phlebitis. (Tr. 8). Again, the ALJ failed to consider *all* the evidence in assessing pain. On remand, the Secretary must consider the medical evidence of phlebitis; subjective allegations of pain accompanied by objective medical evidence should be given great weight. *Rivera v. Schweiker, supra,* 717 F.2d at 725.

## CONCLUSION

The Secretary's findings that Pagan did not suffer from phlebitis, and can return to her old job are not supported by substantial evidence. The case is remanded to the Secretary for a determination whether there is other work which the claimant could perform. *See* 20 C.F.R. §§ 404.1520, 416.920; *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The court cannot make this determination on its own; it is up to the Secretary to apply the "grid," 20 C.F.R. Sub-part P, Appendix 2, to determine whether Pagan can do other work in the national economy. "[W]hen the Secretary ha[s] not applied the grid, application of the grid by the courts exceeds the scope of judicial review ..." *Johnson v. Heckler,* 741 F.2d 948, 952 (7th Cir.1984). *See also Rivera v. Schweiker, supra,* 717 F.2d at 725 (case must be remanded where Secretary has not yet considered whether claimant could engage in gainful activity less strenuous than previous employment).

IT IS SO ORDERED.