Canfield v. SSA                    CV-00-267-B    04/19/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Kathy L. Canfield

v.                                      Civil No. 00-267-B
                                        Opinion No. 2001DNH078

Kenneth S. Apfel, Commissioner,
Social Security Administration


MEMORANDUM AND ORDER

Kathy L. Canfield applied for Title II Social Security Disability Insurance Benefits on February 1, 1995. Canfield alleged an inability to work since November 18, 1993, due to migraines, spina bifida, fibromyalgia, and hip, neck, and back pain. The Social Security Administration ("SSA") denied her application initially and on reconsideration. Administrative Law Judge ("ALJ") Frederick Harap held a hearing on Canfield's claim on October 5, 1995. In a decision dated December 28, 1995, the ALJ found that Canfield was not disabled at any time prior to the expiration of her insured status on June 30, 1995. On January 2, 1997, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for a new hearing and decision. The ALJ held a second hearing on April 11, 1997, and in a decision dated July

10, 1997, the ALJ again found that Canfield was not disabled.  On April 7, 2000, the Appeals Council denied Canfield's request for review, rendering the ALJ's decision the final decision of the Commissioner of the SSA.

Canfield brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the denial of her claim for benefits.  For the reasons set forth below, I vacate the ALJ's decision and remand the case for further proceedings.

## I.  FACTS[1]

Canfield was thirty-three years old when she filed her application for benefits on February 1, 1995.  She has the equivalent of a high school education and has worked as an electronics assembler, electronic line supervisor, office clerk, accounts payable clerk, secretary, and receptionist.  Tr.[2] at

---

[1] Unless otherwise noted, the following facts are taken from the Joint Statement of Material Facts, Doc. No. 7, submitted by the parties.

[2] "Tr." refers to the certified transcript of the record submitted to the Court by the SSA in connection with this case.

21. Although Canfield has not worked since 1990, she alleges that she could have worked up until November 18, 1993, the date she suffered injuries in a car accident.

Canfield ruptured two discs in her neck in the car accident and sustained minor injuries to her mid-back and left shoulder. The ruptured discs cause pain that radiates down into her shoulder and arms and sometimes causes her hands to go numb. Tr. at 58. Canfield had a migraine after the accident, and she testified at the second hearing that she continues to have crippling migraines four or five times per month. She takes Fioricet and Fiorinal with codeine to relieve her migraine symptoms.

The Lakes Region General Hospital Physical Therapy Department evaluated Canfield on November 23, 1993. They determined that she suffered from probable cervical strain and recommended that she attend physical therapy two or three times per week for three to five weeks. In December 1993, Canfield reported to Dr. Theodore Capron, her treating physician, that she developed increased mid-back pain most afternoons which radiated up to her skull and eyes.

On January 7, 1994, Dr. Michele Rush, a neurologist,

examined Canfield. Dr. Rush determined, based on a sensory exam, that Canfield might suffer from a traumatic herniated disc. An MRI (magnetic resonance imaging) of the cervical spine, ordered by Dr. Rush, showed a small, broad-based central herniation in the C4-5 intervertebral disc which minimally impinges on the spinal cord.

In March 1994, Dr. Richard Saunders, a neurosurgeon, examined Canfield. She reported to him that her neck symptoms have potentiated her migraine headaches, increasing their severity and frequency. Dr. Saunders noted that Canfield held her neck in a subtly guarded fashion and that her range of motion from flexion to extension was 90 degrees. Her neurological examination, however, did not show evidence of spinal cord or root impairment, and therefore surgery was not appropriate at that time. Dr. Saunders diagnosed Canfield with a cervical disc problem and a superimposed tension migraine complex. He recommended traction, ultrasound, massage, and collar protection. On March 9, 1994, Canfield ceased attending active physical therapy sessions. At that time, her cervical rotation remained limited to 50 degrees on the left and 40 degrees on the right.

Instead of physical therapy, Canfield began using a home

traction machine on a daily basis.  Tr. at 157.  She also sought chiropractic treatment between July and October 1994 from Dr. Kenneth Rafferty.  Shortly after her chiropractic treatment ended, Canfield sought psychological treatment from Richard Segal, M.A., because she was anxious, agitated, and depressed. Segal noted that Canfield's depression was moderate and that her daily functioning was not greatly impaired as a result.  In November 1994, Dr. Capron noted that Canfield was taking Elavil and that, as a result, her mood was better.

In January 1995, Dr. Capron noted that Canfield continued to complain of neck, shoulder, back, and hip pain, all of which waxed and waned.  Canfield told Dr. Capron that because she felt weak all over she had to give up her baby-sitting because she could no longer pick up children.  Canfield tested positive for 14 of the 18 trigger points for fibromyalgia.[3]  Dr. Capron prescribed Flexeril but later placed Canfield on Relafen.

In February 1995, Dr. Campbell, a medical consultant for the

---

[3] Fibromyalgia is a musculoskeletal and connective tissue disorder which results in pain in the fibrous tissues, muscles, tendons, and ligaments, however, no attendant inflammation is present.  Merck Manual of Diagnosis and Therapy 481 (17th ed. 1999).

state disability determination agency, assessed Canfield's physical residual functional capacity ("RFC"). Dr. Campbell determined that Canfield could lift and carry 10 pounds frequently and 20 pounds occasionally; sit or stand for six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Campbell also concluded that Canfield's ability to reach overhead, to handle objects frequently, and to turn her head and neck was limited.[4] Based on this RFC assessment, the state disability determination agency concluded that Canfield's muscle pain, fatigue, and left arm weakness might prevent her from performing past types of work which required repetitive overhead reaching, frequent handling, or frequent turning of the hands and wrists. The agency, however, concluded that Canfield would be able to perform some types of light work.

In March 1995, Dr. David Publow examined Canfield and reviewed her medical records at the request of an insurance company. He did not assess Canfield's physical RFC, however, he

---

[4] I note that there is a discrepancy as to the correct reading of Dr. Campbell's notes in the "Manipulative Limitations" section of her RFC assessment. I discuss this discrepancy in greater detail in Footnote 11 of the Discussion section.

noted that Canfield showed guarded motion of the cervical spine, and that this motion was not within the normal range. Dr. Publow concluded that Canfield was not disabled from her usual duties as a homemaker and that her cervical condition, under the AMA Guide to Permanent Impairment, resulted in a permanent partial physical impairment of 5% of the whole body. Dr. Saunders agreed that Canfield suffered a 5% impairment due to her disc herniation, however, he felt that her total impairment "equates to a substantially greater disability, in light of her probable fibromyalgia, chronic strain, and tension migraine complex." Tr. at 184.

Dr. Burton Nault, a medical consultant for the state disability determination agency, also reviewed Canfield's medical records on June 1, 1995. He agreed with Dr. Campbell's RFC assessment that Canfield can perform light work but that she should avoid repetitive overhead reaching and frequent bending and turning of her head and neck.

Later that month, Dr. Michael Evans conducted a psychological evaluation of Canfield. He reported that there was no sign of current significant depression, although he diagnosed her with recurrent major depression and post-traumatic stress

disorder. Dr. Evans also noted that Canfield needed assistance with some physical activities but that she was able to maintain her household, shop, cook, and drive. He reported that Canfield would have no difficulty in adapting to stresses in the work environment, but he noted that, because of her physical problems, it might be difficult for her to maintain a regular work schedule. In July 1995, Dr. Udo Rauter, a psychological consultant for the state disability determination agency, prepared a mental RFC assessment and psychiatric review for Canfield in which he determined that Canfield's depression was in remission and that this condition is not severe. He noted, however, that her medical condition and the attendant fatigue might interrupt her work performance.

In March 1996, Dr. Capron assessed Canfield's functional limitations. He determined that Canfield could only lift less than 10 pounds once every hour; could stand for not more than 15 minutes at a time; sit for no more than 30 minutes at a time; and alternate sitting and standing for no more than one hour before she would have to sit in a recliner or lie down for 15 to 30 minutes. He also concluded that she would have severe limitations in crawling, kneeling, climbing, reaching, handling,

and fingering.  He determined that her pain and other non-exertional limitations are markedly debilitating which means that her bad days occur a few times per week precluding scheduled events.

At the second hearing before the ALJ, Canfield testified that she has no range of side-to-side motion in her neck, that her head droops forward due to a lack of stability in her neck and back, and that she wears a neck brace.

## II. STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits, and upon timely request by the claimant, I am authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision.  See 42 U.S.C. § 405(g).  My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence.  See id.; Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The ALJ is responsible for settling credibility issues, drawing inferences from the

record evidence, and resolving conflicts in the evidence.  See Irlanda Ortiz, 955 F.2d at 769.  Therefore, I must "uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Id. (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

While the ALJ's findings of fact are conclusive when supported by substantial evidence, they "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to the experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  I apply this standard in reviewing the issues that Canfield raises on appeal.

## III. DISCUSSION

The Social Security Act (the "Act") defines "disability" for the purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A). The Act directs an ALJ to apply a five-step sequential analysis to determine whether a claimant is disabled.[5] See 20 C.F.R. § 404.1520.

At step four of the process, the ALJ must determine whether the claimant's impairment prevents her from performing her past work. See id. § 404.1520(e). To make this determination, the ALJ must assess both the claimant's residual functional capacity ("RFC"), that is, what the claimant can do despite her impairments, and the demands of the claimant's prior employment.[6] See id.; 20 C.F.R. § 404.1545(a); see also Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam). The claimant, however, bears the burden of showing that she does not have the RFC to perform her past relevant work. See Santiago, 944 F.2d at 5. Thus, the claimant must adequately

---

[5] In applying the five-step sequential analysis, the ALJ is required to determine: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; and (5) whether the impairment prevents or prevented the claimant from doing any other work. See 20 C.F.R. § 404.1520 (2000).

[6] The ALJ uses a claimant's RFC as the basis for deciding what types of work a claimant can perform in spite of her impairments. See id. § 404.1545(a).

explain what her past work responsibilities entailed and why she was unable to perform those duties during the relevant claim period.  See id.

At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant can perform."  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (per curiam).  The Commissioner must show that the claimant's limitations do not prevent her from engaging in substantial gainful work, but need not show that the claimant could actually find a job.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (per curiam) ("The standard is not employability, but capacity to do the job.").

In the present case, the ALJ concluded at step four of the sequential evaluation process that Canfield was "not disabled."  Tr. at 20-21, 26.  The ALJ based his conclusion on the fact that: (1) Canfield retains the RFC to perform a full range of both light and sedentary work, with the exception that she can not perform constant nonstrength exertions, such as bending and reaching; and (2) Canfield can perform her past relevant work including her electronics jobs and her office clerical jobs.  Id.

at 20-21, 25-26.

Canfield makes multiple arguments in support of her motion to reverse the ALJ's decision. First, Canfield argues that the ALJ improperly calculated her RFC because he ignored the RFC assessments of the state agency medical consultants. Second, she argues that the ALJ failed to fully investigate and to make explicit findings about the demands of her past relevant work. Lastly, Canfield argues that the ALJ committed legal error when he judged matters entrusted to medical and vocational experts. Because I decide to remand this case based on Canfield's first argument, I only briefly address her second argument and do not address her third argument.

## A. The ALJ's RFC Determination

### 1. Standards Governing an RFC Determination

The ALJ is responsible for determining a claimant's RFC, see 20 C.F.R. § 404.1546, and the ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. See SSR 96-8p, 1996 WL 374184, at *3 (1996); see also Ferraris v. Heckler, 728 F.2d 582, 586-87 (2d Cir. 1984)(holding that the ALJ's findings on a claimant's RFC were insufficient where the

-13-

ALJ determined the claimant's RFC in a conclusory manner without a function-by-function assessment). When making his RFC determination, an ALJ must "consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others." Ferraris, 728 F.2d at 585; see 20 C.F.R. § 404.1545(a) (stating that the RFC must be based on all relevant evidence). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. See White v. Sec'y of Health and Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) (noting that the failure to specify a basis for the RFC determination is a sufficient reason to vacate a decision of the Commissioner); SSR 96-8p, 1996 WL 374184, at *7.

Furthermore, although the ALJ is responsible for determining a claimant's RFC, the ALJ "must consider and evaluate any assessment of the [claimant's] RFC by a state agency medical or psychological consultant." SSR 96-6p, 1996 WL 374180, at *4 (1996); see SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

-14-

The ALJ should treat RFC assessments by a state agency medical consultant as medical opinions from nonexamining sources. See 20 C.F.R. § 404.1527(f). Therefore, the ALJ must evaluate these medical opinions and consider all of the factors for weighing opinion evidence enumerated in the Regulations. See id. § 404.1527(f)(2)(ii).[7] Although an ALJ is not bound by the findings of a state agency medical consultant, he "may not ignore these opinions and must explain the weight given to the opinions." SSR 96-6p, 1996 WL 374180, at *2.

2. The ALJ's Determination of Canfield's RFC

The ALJ determined at step four of the sequential evaluation process that Canfield retained the RFC to perform a full range of both light and sedentary work,[8] with the exception that she can

_____

[7] Such factors include "the physician's or psychologist's medical specialty and expertise . . ., the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1427(f)(2)(ii).

[8] Light work may involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" "a good deal of walking or standing;" and/or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "If someone can do light work, . . . [she ordinarily] can also do sedentary work." Id. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles

not lift, carry, push or pull more than 20 pounds and that she cannot perform constant nonstrength exertions such as bending and reaching. Tr. at 25-26. To support his decision, the ALJ provided the following function-by-function assessment:

> I further find that [her fibromyalgia and chronic cervical sprain] do not result in the type of severe work-related limitations for disability on the basis of vocational factors. At the most they limit her ability to lift, carry, push and pull medium-weight articles and performing (sic) constant nonstrength exertions such as bending and reaching.

Id. at 22. In making this determination, however, the ALJ did not address the RFC assessments of Dr. Campbell and Dr. Nault, the two state agency medical consultants.[9] Tr. at 22. Because these assessments contain findings which cast doubt on the ALJ's ultimate conclusion that Canfield can perform the full range of light work with only the limited exceptions identified by the ALJ, his failure to address the assessments in his decision is a fatal deficiency that requires a remand for further findings.[10]

---

like docket files, ledgers, and small tools;" occasional "walking and standing;" and frequent "sitting." Id. § 404.1567(a).

[9] The ALJ also explicitly discredits Dr. Capron's RFC assessment. Tr. at 22.

[10] The ALJ's RFC determination is also defective to the extent that it is based exclusively on Dr. Publow's examination

See <u>Nguyen v. Chater</u>, 172 F.3d at 35; <u>Nguyen v. Callahan</u>, 997 F. Supp. 179, 182 (D. Mass. 1998); <u>see also</u> <u>SSR</u> 96-6p, 1996 WL 374180, at *2.

Dr. Campbell and Dr. Nault both found that Canfield has only a limited ability to frequently handle objects and turn her head and neck. Tr. at 93.[11] These limitations support Canfield's

_____

of Canfield because the ALJ necessarily would have "judged matters entrusted to the experts," when he relied on Dr. Publow's examination. <u>Nguyen v. Chater</u>, 172 F.3d at 35. Dr. Publow did not assess Canfield's functional capacity, rather he assessed her cervical spine motion, lumbar spine motion, and her reflexes, and he performed strength testing. Tr. at 257-60. Dr. Publow also diagnosed her with cervical back strain, chronic lumbar, and lower extremity symptoms. <u>Id.</u>

Because an ALJ is a lay person, he "is not qualified to assess residual functional capacity based on a bare medical record." <u>Gordils v. Sec'y of Health and Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam). This means that if the medical evidence only describes the claimant's impairments but does not relate those impairments to an exertional level, such as light work, as was the case with Dr. Publow's report, the ALJ may not make that connection himself. <u>See</u> <u>id.</u>; <u>Rosado v. Sec'y of Health and Human Servs.</u>, 807 F.2d 292, 293 (1st Cir. 1986) (per curiam). In these situations, an expert's RFC evaluation is "ordinarily essential." <u>Manso-Pizarro v. Sec'y of Health and Human Servs.</u>, 76 F.3d 15, 17 (1st Cir. 1996) (per curiam).

[11] There is a discrepancy in the record as to the correct reading of Dr. Campbell's notes in the "Manipulative Limitations" section of her RFC assessment. Tr. at 93. One SSA disability examiner who provided a decision based on Dr. Campbell's RFC, interpreted the notes as reading "limited overhead reaching, frequent handling and turning of hands and wrists." Tr. at 89. The SSA disability examiner who provided a decision based on Dr.

cause and cast doubt on the ALJ's ultimate conclusion that Canfield can perform her past relevant work. Therefore, the fact that the ALJ fails to either address these limitations or explain why they should not be included in Canfield's RFC is troubling in light of the SSA's Ruling that an ALJ "may not ignore the opinions [of state agency medical consultants] and must explain the weight given to the opinions in [his] decision." SSR 96-6p, 1996 WL 374180, at *2.

Because the ALJ failed to mention this evidence, it is impossible to determine whether this evidence was considered, and implicitly discredited, or was simply overlooked. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[W]e need from the ALJ . . . some indication of the evidence that was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply

Nault's affirmance of Dr. Campbell's RFC interpreted the language as reading "limited overhead reaching, frequent bending and turning of head and neck." Tr. at 103. The Joint Statement of Material Facts, Doc. No. 7, submitted by the parties, does not resolve this discrepancy. On remand, the ALJ will first have to resolve this discrepancy before being able to address the relevant limitations from the RFC assessment. The ALJ may need to subpoena Dr. Campbell and Dr. Nault or, perhaps, seek to have the parties stipulate as to the correct reading of Dr. Campbell's notes to resolve this issue.

ignored."); see also Nguyen v. Callahan, 997 F. Supp. at 182 ("Where the ALJ fails to explicitly indicate the weight given to all relevant evidence, the reviewing court can not affirm the Commissioner's decision.") (internal quotation marks omitted). I am compelled, therefore, to remand this case for reconsideration, with instructions that the ALJ, when reaching a new decision, explicitly address Dr. Campbell's and Dr. Nault's RFC assessments and the manipulative limitations described therein.[12]

## B. The ALJ's Determination That Canfield Can Return To Her Past Relevant Work

Although I remand this case based on the inconclusiveness of the ALJ's RFC determination, I also briefly address the ALJ's characterization of Canfield's past relevant work. In the event that the ALJ determines on remand that Canfield is limited in her ability to turn her head and neck, to turn her hands and wrists, or to handle objects, the ALJ will need to investigate more

---

[12] I also direct the ALJ to address the mental RFC assessment performed by Dr. Rauter, the state agency psychological consultant. Canfield only discusses the mental RFC assessment in passing, therefore, I do not address the contents of the assessment. Because the ALJ fails to address it in his opinion, however, as with the medical consultants' RFC assessments, the ALJ must address it on remand. SSR 96-6p, 1996 WL 374180, at *2.

thoroughly the demands of Canfield's past relevant work. See SSR 82-62, 1982 WL 31386, at *3 (1982).

At this stage of the step four analysis, the initial burden is on Canfield to make a "reasonable threshold showing" that she cannot perform her past relevant work because of her alleged disability. See Santiago, 944 F.2d at 5. To meet her burden, Canfield need only produce evidence of how her functional limitations preclude her from performing her past relevant work. See id. Thus, although the burden is initially on Canfield, once she has alerted the ALJ to the presence of an issue, the ALJ is required to further develop the record. See id. at 5-6.

In this case, the ALJ found that Canfield described her past relevant work at her electronics jobs as involving "sitting for five hours, standing for one hour and walking for one hour. No lifting was involved and only occasional reaching or bending." Tr. at 21. Canfield also claimed that her past work required "significant use of the head and neck."[13] Tr. at 25. In addition, the record contains evidence suggesting that Canfield's

_____

[13] Although the ALJ rejected this claim, he relied on evidence that could only support the rejection of Canfield's different claim that she could reach only occasionally rather than frequently.

-20-

job required much typing and assembling of PC boards; jobs that Canfield may not be able to perform if her ability to handle objects is limited. Tr. at 25, 124. In the event that the ALJ amends his determination of Canfield's RFC to include the additional limitations suggested by Dr. Campbell and Dr. Nault, he must, on remand, carefully consider Canfield's claims concerning the nature of her past work and explain why the limitations reflected in her RFC do not prevent her from returning to that work. See SSR 82-62, 1982 WL 31386, at *3 (requiring that the ALJ obtain detailed information about job requirements including: strength, endurance, and manipulation demands); see also Kirby v. Sullivan, 923 F.2d 1323, 1326-27 (8th Cir. 1991) (reversing the Commissioner's decision where the ALJ failed to fully investigate and make explicit findings about the actual physical demands, including the required use of the hands and wrists, of a clerical position).

## IV. CONCLUSION

Because the ALJ determined Canfield's RFC by ignoring and selectively extracting relevant evidence, I am unable to conclude

-21-

that his decision is supported by substantial evidence. Accordingly, I vacate the ALJ's decision, pursuant to sentence four of 42 U.S.C. § 405(g), and remand this case for further proceedings in accordance with this Memorandum and Order. Therefore, I grant Canfield's motion for an order reversing the Commissioner's decision, Doc. No. 5, and I deny the Commissioner's motion for an order affirming his decision, Doc. No. 6. The Clerk is instructed to enter judgment accordingly. See <u>Shalala v. Schaefer</u>, 509 U.S. 292, 297-98 (1993).

 SO ORDERED.

       _____
       Paul Barbadoro
       Chief Judge

April 19, 2001

cc: Peter Marsh, Esq.
  David L. Broderick, Esq.