**Sheryle A. COYLE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 98–CV–1203.

United States District Court, N.D. New York.

Oct. 8, 1999.

370

Stephen J. Mastaitis, Jr., Saratoga Springs, NY, for Plaintiff.

Hon. Daniel J. French, United States Attorney, Northern District of New York, Syracuse, NY, William H. Pease, Assistant United States Attorney, of counsel.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance benefits on August 3, 1994, alleging she has been disabled since December 8, 1993 due to progressive fibromyalgia, a seizure disorder, unstable diabetes,[1] and a bronchial dysfunction. Her application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 7, 1995. The ALJ issued an unfavorable decision on December 1, 1995. The Appeals Council denied review on May 9, 1997, making the ALJ's decision the final decision of the Commissioner. Plaintiff then commenced the instant action on August 12, 1997.

1. There is no evidence in the record of any treatment for diabetes.

## II. *FACTS*

The facts stated in plaintiff's brief are adopted with any exceptions as noted.

## III. *CONTENTIONS*

Plaintiff contends that the ALJ's decision should be reversed and/or remanded because he:

1. Failed to fully develop the record;

2. Did not properly consider plaintiff's diagnosis of fibromyalgia or chronic fatigue syndrome ("CFS");

3. Improperly rejected plaintiff's subjective complaints of pain; and

4. Rejected the opinions of plaintiff's treating physicians.

## IV. *DISCUSSION*

### A. *Standard of Review*

A court's review of the Secretary's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988)(citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Williams,* 859 F.2d at 258.

Additionally, the scope of review involves determining both whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguable supported by substantial evidence, the Commissioner's decision may not be affirmed. *Id.* at 986.

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979)(remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir.1975). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 644 (2d Cir.1983)(reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

### B. *Five–Step Disability Determination*

The regulations mandate that the ALJ follow a five step evaluation process to determine whether an individual is dis-

abled.[2] 20 C.F.R. § 404.1520. Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA"). § 404.1520(b). If a claimant is engaged in SGA, he will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. § 404.1520(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. § 404.1520(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes performance of their past relevant work. § 404.1520(e). If the ALJ determines that the claimant cannot perform their past relevant work, then at Step Five, the ALJ determines whether the claimant can do any other work. § 404.1520(f).

The claimant has the burden of showing that they cannot perform past relevant work. *Ferraris,* 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of Health & Human Servs.,* 910 F.2d 64, 65 (2d ·Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. § 404.1520(f); *see also New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990); *Ferraris,* 728 F.2d at 585 (four factors used to determine if claimant can perform other work: Age, education, physical ability, and work experience)(citing 42 U.S.C. § 423(d)(2)(A)). The ALJ is also under a duty to fully develop the record, even if the claimant is represented by counsel. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).

### C. *Step Five—The Claimant Is Capable Of Performing Sedentary Work*

In the instant case, at Step One, the ALJ found that plaintiff has not engaged in SGA since December 8, 1993, her alleged onset date. At Steps Two and Three, the ALJ determined that plaintiff has a severe physical impairment, but that such impairment does not meet or equal a listed impairment. At Step Four, the ALJ decided that plaintiff cannot perform her past relevant work as a licensed practical nurse. However, at Step Five, the ALJ concluded that plaintiff has the residual functional capacity to perform sedentary work.

### 1. *Residual Functional Capacity Standard of Review*

RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a). The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions,

---

**2.** A claimant will be considered disabled if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's [P]hysical or mental impairment or impairments [must be] of such severity that he is

not only unable to do his [past relevant] work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

including that of the claimant, of limitations which go beyond symptoms. § 404.1545. Age, education, past work experience, and transferability of skills are vocational factors to be considered. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. *Id.; see also* §§ 404.1567, 404.1569a.

 Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull. § 404.1569a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." § 404.1569a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Id.; Sullivan v. Secretary of Health & Human Servs.,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *Ferraris,* 728 F.2d at 588. The RFC is then used to determine particular types of work a claimant may be able to perform. § 404.1545(a).

If the claimant can do work that exists in the national economy a finding of not disabled will be made. § 404.1566(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.* Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." § 404.1567. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally. § 404.1567(a). Light work requires ability to lift no more than twenty pounds, with lifting or carrying up to 10–pound objects frequently. § 404.1567(b). A job falls into the light category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," although the weight lifted is small. *Id.* Furthermore, an individual who can do light work is considered able to do sedentary work, "unless there are additional limiting factors such as ... inability to sit for long periods of time." *Id.* "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." § 404.1566(a). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. § 404.1566(b).

After evaluating the record, the ALJ determined that plaintiff could not perform her past relevant work as a licensed practical nurse. (Tr. at 18.) However, he found that plaintiff retains the RFC to perform sedentary work. *Id.* He then considered plaintiff's age, education and work experience. Plaintiff is a younger individual with a high school education and skilled work experience. *Id.* at 19. These factors, combined with plaintiff's RFC for sedentary work, coincide with Rule 201.28, which directs a conclusion of not disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2. Plaintiff contends that, in making the determination that is able to perform sedentary work, the ALJ failed to fully develop the record, improperly considered her diagnosis of CFS or fibromyalgia, improperly rejected her subjective complaints of pain and other symptoms, and failed to give controlling weight to the opinions of her treating physicians. Each of these arguments will be addressed seriatim.

**a.** *The ALJ's Duty to Fully Develop the Record*

 The plaintiff alleges that the ALJ failed to fully develop the record because

no reports were obtained from her primary physician, Dr. Larry Gruet. The defendant claims, however, that reasonable efforts were made to obtain reports from Dr. Gruet, but after several attempts, such records were not turned over.

It is the ALJ's duty to fully develop the record. *See Tejada*, 167 F.3d at 774. The regulations provide that before a disability determination is made, the Commissioner will develop the complete medical history

> [F]or at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. § 404.1512(d). "Reasonable effort" according to the regulations means that the Commissioner will make an initial request for evidence from a medical source and, if such evidence is not received in ten to twenty calendar days, one follow-up request will be made, after which the medical source will be afforded an additional ten days to respond. § 404.1512(d)(1).

Dr. Gruet was first contacted by letter dated August 15, 1994. (Tr. at 147.) This letter requested completion of a medical questionnaire, copies of plaintiff's records, or a report documenting plaintiff's condition. *Id.* On September 9, 1994 and March 20, 1995, follow-up letters were sent, again requesting the submission of information relevant to plaintiff's condition. *Id.* at 145–46. Two follow-up telephone calls were made in April 1995, at which time Dr. Gruet's office reported that the request was on Dr. Gruet's desk and it "looks like he is working on it." *Id.* at 143–44. On May 18, 1995, Dr. Gruet's office reported that the requested information was mailed

on May 16, 1995. *Id.* at 141. When the information was not received by June 8, 1995, another telephone inquiry was placed, at which time, Dr. Gruet's office promised to send another copy. *Id.* at 140. The information still has not been received.

Clearly, reasonable attempts were made to obtain medical evidence from Dr. Gruet. It would be unjust to penalize the defendant for Dr. Gruet's apparent continuous refusal to comply with defendant's requests for medical information concerning plaintiff's condition.[3]

### b. *The ALJ's Consideration of Plaintiff's Impairments*

■ Plaintiff next asserts, without elaborating, that the ALJ either misunderstood or disregarded her diagnosis of fibromyalgia or CFS. The defendant contends that the ALJ properly considered this diagnosis and concluded that, based upon the evidence in the record, plaintiff's condition does not render her totally disabled.

> A classification CFS is recommended if [A]fter other diagnostic possibilities have been excluded through a series of clinical examinations and testing, the subject reports persistent or relapsing fatigue for 6 or more consecutive months and exhibits four or more of the following symptoms concurrently for 6 or more consecutive months: 1. impaired memory or concentration; 2. sore throat; 3. tender cervical or axillary lymph nodes; 4. muscle pain; 5. multi-joint pain; 6. new headaches; 7. unrefreshing sleep; and, 8. post-exertion malaise.

*Fragale v. Chater*, 916 F.Supp. 249, 253 (W.D.N.Y.1996) (citation omitted). With respect to fibromyalgia:

> The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness,

---

**3.** It should also be noted that plaintiff's attorney never requested that the record be held open to obtain reports from Dr. Gruet, nor

did he object that such reports were missing from the record. (*Id.* at 27–29.)

and ... multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch .... Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the plaintiff] is one of the minority.

*Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir.1996) (citation omitted).

Plaintiff was first examined by Dr. Donald Wexler, her treating rheumatologist, on February 18, 1994. At that time, she complained of arthralgias, fatigue, and weakness. (Tr. at 123.) Upon examination, Dr. Wexler noted that plaintiff was "a well developed, well nourished ... female in no acute distress." *Id.* at 124. He observed no significant lymphadenopathy. *Id.* Plaintiff had mild tenderness in the lumbosacral spine and also her fingers, but not localized in the joints. *Id.* Plaintiff exhibited no synovitis in the finger joints, wrists, elbows, or shoulders. *Id.* Plaintiff did, however, have tenderness in the lateral hips, knees, and elbows. *Id.* Plaintiff did not complain of sore throat, headaches, trouble sleeping, impaired memory or concentration, or muscle pain. Nor did she allege any stiffness or exhibit tenderness in at least eleven trigger points.

In March 1994, plaintiff complained of difficulty sleeping and malaise. *Id.* at 122. At this time, Dr. Wexler noted diffuse tenderness in the fingers, elbows, lateral hips, sternum, and upper trapezius. *Id.*

He prescribed Amitriptyline and remarked that if plaintiff's symptoms persisted or worsened, "consideration for the fibrositis group will be entered." *Id.* At plaintiff's next appointment on June 24, 1994, however, plaintiff remarked that she improved with the medication, she had been sleeping better and had less myalgia. *Id.* at 121. She also told Dr. Wexler that she took care of her husband, who is a paraplegic. *Id.* Upon examination, plaintiff only exhibited tenderness in the hips, upper trapezius, and sternum; no longer in the fingers and elbows. *Id.*

Plaintiff was examined by a consulting physician, Dr. George Hemstead, on October 19, 1994. Plaintiff now complained of problems with her ankles, wrists, elbows, knees, and fingers. *Id.* at 116. Plaintiff wore braces on her knees, wrists, elbows, and ankles, and walked with a cane. *Id.* Plaintiff's numerous medications for her various ailments were noted;[4] notably absent was any mention of Amitriptyline, which was prescribed by Dr. Wexler and had proved significantly helpful.

By December 1994, plaintiff told Dr. Wexler that she was able to do aerobic activities, such as walking, every day. *Id.* at 119. Dr. Wexler remarked that although plaintiff wore knee braces, he observed no evidence of inflammation or degenerative arthritis. *Id.* He also noted trigger points only in the upper trapezius and lateral hips. *Id.*

Examining the record as a whole, plaintiff never exhibited the requisite symptoms of CFS for six or more consecutive months. She only complained of sleep disturbance or stiffness one time and was never diagnosed with at least eleven trigger points which would indicate the presence of fibromyalgia. However, even assuming, *arguendo*, that the evidence did

---

4. Plaintiff was taking medication for seizures. (*Id.* at 116.) It is unclear how long she has had this problem; she provides various times at which she experienced the onset of seizures, ranging from age 21, *Id.* at 116, to age 27. *Id.* at 124. Plaintiff also takes medication for allergies and a gastrointestinal problem. *Id.* at 116. She uses an inhaler for apparent bronchial problems, *Id.* at 36, 95, 116, but has several pets, which include a dog, a cat, a bird, a rabbit, and three turtles. *Id.* at 36.

establish one of these conditions, as the next section will illustrate, plaintiff's condition is not so severe as to render her totally disabled.

### c. Subjective Complaints of Pain and Other Symptoms

■ Throughout the evaluation process, the ALJ must consider subjective complaints of pain. § 404.1529(a), (d). However, the ALJ is "not obliged to accept without question the credibility of such subjective evidence." *Marcus*, 615 F.2d at 27; *Peterson v. Gardner*, 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano*, 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). There must be objective medical evidence which demonstrates that the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." § 404.1529(a). If the medical evidence shows such an impairment, then the intensity and persistence of the claimant's symptoms must be evaluated so that a determination may be made regarding how the claimant's symptoms limit his/her capacity for work. § 404.1529(c). "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his/her symptoms, including pain, must be considered. § 404.1529(c)(3). Relevant factors include: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment received to relieve symptoms; and (6) any other measures taken to relieve symptoms. § 404.1529(c)(3)(i)-(vi).

■ After weighing the objective medical evidence, the claimant's demeanor, other indicia of credibility, as well as any inconsistencies between the medical evidence and claimant's subjective complaints, the ALJ may decide to disregard the claimant's subjective opinion with respect to the degree of impairment. *See* § 404.1529(c)(4); *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985). An ALJ who rejects subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987).

■ In fibromyalgia cases, "the credibility of the claimant's testimony regarding her symptoms takes on 'substantially increased' significance in the ALJ's evaluation of the evidence," *Fragale*, 916 F.Supp. at 254 (chronic fatigue syndrome), because

> [P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic of fibrositis patients.

*Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir.1988). In the present case, the ALJ considered plaintiff's complaints of sharp pain in all of her joints, especially her knees and elbows, swelling of her ankles, unsteady gait, poor grip strength, ongoing seizures, and limited daily activities. (Tr. at 16–17.) However, the ALJ found plaintiff's complaints not credible, as they are inconsistent with her own prior statements and the other substantial evidence in the record.

Plaintiff testified that she had the most pain in her knees and elbows. *Id.* at 51. However, plaintiff only complained one time, to Dr. Hemstead, that she had pain in her knees. *Id.* at 116. Plaintiff never complained of such pain to Dr. Wexler, and he specifically noted that plaintiff did not have tenderness in her knees or elbows.

*Id.* at 119, 121, 130. Plaintiff also alleges that she has swelling in her ankles. *Id.* at 51. However, none of her doctors found any such swelling. In fact, Dr. Wexler specifically found that her ankles were not swollen. *Id.* at 119, 124.

Plaintiff testified that she is very inactive and that each day she only helps get her daughter off to school, watches television, and does a little walking. *Id.* at 39–40. However, plaintiff told Dr. Wexler that she cares for her paraplegic husband, *Id.* at 121, and that she performs aerobic activity each day. *Id.* at 119. She also reported that she helps cook, grocery shop, and sometimes attends her daughter's clogging lessons and shows. *Id.* at 35, 37, 87, 90.

In addition to plaintiff's daily activities, the record also shows that she improved significantly with medication, *Id.* at 119, 121, contradicting her claims of constant, stabbing pain brought on with any movement. *Id.* at 93. Further, plaintiff's treatment was conservative, limited only to medication and hot packs.[5] *Id.* In light of this evidence, the ALJ properly considered plaintiff's testimony and determined that her claims of disabling pain were not credible to the extent alleged.

#### d. *Treating Physician Rule*

■ Plaintiff's final contention is that the ALJ improperly rejected the opinions of three of her treating physicians, Dr. Wexler, Dr. Thomas Eagan, and Dr. Richard Brooks. The opinion of a treating physician is given controlling weight, under certain circumstances, in the belief that an ongoing relationship between doctor and patient yields a better evaluation than a one-time physical. *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993); 20 C.F.R. § 404.1527(d)(2). However, a treating physician's opinion will be given controlling weight only where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence. § 404.1527(d)(2); *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir. 1999). If the opinion is not given controlling weight, the ALJ must give good reasons in his decision for the weight given to the treating source's opinion. § 404.1527(d)(2). Furthermore, the ALJ must consider various factors in determining the weight given to treating physician's opinions including the length of the treatment relationship, the frequency of examination by the treating physician for the condition in question, the specialization of the physician, the supportability and consistency of the opinion with the record as a whole, and any other relevant factors. § 404.1527(d)(2)-(6). "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Rosa,* 168 F.3d at 79 (citations omitted). Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Johnson v. Bowen,* 817 F.2d at 986.

Plaintiff contends that Dr. Wexler's opinion, given on plaintiff's initial visit, that plaintiff's symptoms "may qualify" as CFS, and that she has "classical trigger point locations of fibrositis," (Tr. at 124), should be afforded controlling weight. Dr. Wexler's statement is equivocal and unsupported by substantial evidence. As was previously discussed, supra p. 375, plaintiff did not manifest or complain of the requisite symptoms associated with CFS or fibromyalgia. Plaintiff claims that a subsequent opinion by Dr. Wexler wherein he stated that "[b]ecause of the above syndrome, the patient is fully disabled and not employable at the present time," *Id.* at 128, should also be given controlling weight. However, this opinion is conclusory and is an opinion on an issue which is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Furthermore, these three opinions by Dr. Wexler are

---

5. Plaintiff apparently attempted physical therapy but claimed that she could not do it. *Id.* at 119. There is no evidence of her attending physical therapy in the record.

378

inconsistent with the medical evidence, the evidence of plaintiff's daily activities, and the fact that he remarked that plaintiff improved with medication. (Tr. at 119, 121.)

Dr. Eagan permanently restricted plaintiff to lifting no greater than five pounds due to lumbar sprain. *Id.* at 127. First, it is not clear that Dr. Eagan is even a treating physician. Plaintiff did not list Dr. Eagan as one of her doctors in her disability reports, *Id.* at 82–83, 96, except in one statement associated with her request for an administrative hearing, *Id.* at 99, and she never mentioned him at her administrative hearing. In addition, there is no evidence indicating the length of the treatment relationship or frequency of examinations. Finally, Dr. Eagan provides no clinical support for his opinion. In fact, x-rays of plaintiff's lumbosacral spine were normal, except for a mild congenital anomaly. *Id.* at 118.

Plaintiff submitted a letter from Dr. Brooks to the Appeals Council. The regulations provide for review of new and material evidence by the Appeals Council only "if it relates to the period on or before the date of the administrative law judge hearing decision." § 404.970(b); *see also Perez v. Chater,* 77 F.3d 41, 44 (2d Cir.1996). If the new and material evidence so relates, "[t]he Appeals Council shall evaluate the entire record including the [additional] evidence submitted ... then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b).

Dr. Brooks confirmed in an October 21, 1996 letter that he treats plaintiff for epilepsy and a progressive neurological disorder. (Tr. at 138.) Dr. Brooks opined that plaintiff "is not able to work because of difficulty with ambulation and poor motor function." *Id.* However, as already noted, Dr. Brooks treats plaintiff for her neurological conditions, not her problems with motor functioning and ambulation. In addition, with respect to plaintiff's neurologi-

cal problems, Dr. Brooks reported that plaintiff is "well-controlled on her current regime" of medication. *Id.* at 129. Thus, Dr. Brooks' October 1996 letter does not provide a basis on which to conclude that the ALJ's findings are contrary to the weight of the evidence.

## V. CONCLUSION

A review of the entire record in this case reveals that the ALJ's findings are supported by substantial evidence. Accordingly, it is

ORDERED, that the ALJ's decision denying plaintiff Social Security Disability Insurance benefits is AFFIRMED.

IT IS SO ORDERED.