**Michael SMITH, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of Social Security, Defendant.**

**No. 98–CV–1765.**

United States District Court,
N.D. New York.

Oct. 19, 1999.

Legal Services of Central New York, Inc., Syracuse, NY (Michelle Bushlow, Paul F. Kelly, of counsel), for plaintiff.

Hon. Daniel J. French, United States Attorney, Northern District of New York, Syracuse, NY, (William H. Pease, Assistant United States Attorney, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability Insurance benefits and Supplemental Security Income. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## I. *PROCEDURAL HISTORY*

Plaintiff filed applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits on April 10, 1996 and May 17, 1996, respectively, alleging that he has been disabled since August 1, 1993 due to bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and phobias. His application for SSDI was denied initially and on reconsideration.[1] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 16, 1997. The ALJ issued an unfavorable decision on February 12, 1998. The Appeals Council denied plaintiff's request for review on October 6, 1998, making the ALJ's decision the final decision of the Commissioner.

## II. *FACTS*

This court adopts the facts set forth in plaintiff's brief.

## III. *CONTENTIONS*

Plaintiff contends that the ALJ's decision should be reversed and/or remanded because the ALJ:

(*See* Tr. at 3.)

---

**1.** Documentation concerning plaintiff's SSI application was not included in the record.

1. Failed to accord the proper weight to his treating physician's opinion;

2. Erred in finding that plaintiff's impairments do not meet or equal a listed impairment;

3. Failed to accord proper weight to the plaintiff's subjective complaints concerning his functional limitations;

4. Failed to adequately describe the type of work plaintiff is capable of performing; and

5. Improperly relied on the medical/vocational guidelines.

## IV. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long

as there exists substantial support for the decision in the record. *Williams,* 859 F.2d at 258.

Additionally, the scope of review involves determining both whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguable supported by substantial evidence, the Commissioner's decision may not be affirmed. *Id.* at 986.

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir.1975). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 644 (2d Cir.1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

### B. Five–Step Disability Determination

The regulations mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[2] 20 C.F.R. §§ 404.1520, 416.920.

---

**2.** A claimant will be considered disabled if he    demonstrates an "inability to engage in any

Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA"). §§ 404.1520(b), 416.920(b). If a claimant is engaged in SGA, he will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Part 404, Subpart P, Appendix 1. §§ 404.1520(d), 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes performance of their past relevant work. §§ 404.1520(e), 416.920(e). If the ALJ determines that the claimant cannot perform their past relevant work, then at Step Five, the ALJ determines whether the claimant can do any other work. §§ 404.1520(f), 416.920(f).

Where the alleged disability consists of a mental impairment, a special procedure must be followed at each level of administrative review "in evaluating the severity of mental impairments for adults...." §§ 404.1520a(a), 416.920a(a). First, "the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in [the] case record" must be recorded. §§ 404.1520a(b)(1), 416.920a(a). Second, if a mental impairment is determined to exist, then the Commissioner "must indicate whether certain medical findings which have been found especially

relevant to the ability to work are present or absent." §§ 404.1520a(b)(2), 416.920a(b)(2). Next, the degree of functional loss resulting from the impairment must be rated on a scale ranging from no limitation to severe limitation which is incompatible with the ability to do work-like functions. §§ 404.1520a(b)(3), 416.920a(b)(3). Four factors are analyzed: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) deterioration or decompensation in work or work-like settings. *Id.* The next steps involve determining the severity of the mental impairment and whether it meets or equals a listed mental disorder. §§ 404.1520a(c), 416.920a(c). Finally, if the impairment is severe, but it does not meet or equal a listed mental disorder, an RFC assessment must be completed. §§ 404.1520a(c)(3), 416.920a(c)(3).

The claimant has the burden of showing that they cannot perform past relevant work. *Ferraris,* 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of Health & Human Servs.,* 910 F.2d 64, 65 (2d Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. §§ 404.1520(f), 416.920(f); *see also New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990); *Ferraris,* 728 F.2d at 585 (four factors used to determine if claimant can perform other work:

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's [P]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his [past relevant]

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Age, education, physical ability, and work experience) (citing 42 U.S.C. § 423(d)(2)(A)). The ALJ is also under a duty to fully develop the record, even if the claimant is represented by counsel. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).

In the present case, at Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity since August 1, 1993, his alleged onset date. At Steps Two and Three, the ALJ then determined that plaintiff has a severe impairment but that it does not meet or equal any impairment listed in the regulations. At Step Four, the ALJ determined that plaintiff is not capable of performing his past relevant work. However, the ALJ's found that plaintiff is capable of performing simple, low stress work. The plaintiff contends that the ALJ's decision is based upon misapplication of the law and is not supported by substantial evidence.

### C. *Legal Errors Alleged By Plaintiff*

Plaintiff alleges that the ALJ misapplied the law with respect to evaluating the opinion of his treating physician, and improperly utilized the medical/vocational guidelines to determine that he is not disabled. Each of these arguments will be addressed in turn.

### 1. *Treating Physician Rule*

The opinion of a treating physician is given controlling weight, under certain circumstances, in the belief that an ongoing relationship between doctor and patient yields a better evaluation than a one-time physical. *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a treating physician's opinion will be given controlling weight only where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. §§ 404.1527(d)(2), 416.927(d)(2); *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir.1999). If the opinion is

not given controlling weight, the ALJ must give good reasons in his decision for the weight given to the treating source's opinion. §§ 404.1527(d)(2), 416.927(d)(2). Furthermore, the ALJ must consider various factors in determining the weight given to treating physician's opinions including the length of the treatment relationship, the frequency of examination by the treating physician for the condition in question, the specialization of the physician, the supportability and consistency of the opinion with the record as a whole, and any other relevant factors. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6). "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Rosa,* 168 F.3d at 79 (citations omitted). Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Johnson v. Bowen,* 817 F.2d at 986.

Plaintiff contends that the ALJ should have accorded controlling weight to the opinion of his treating psychiatrist, Dr. Y.S. Zikry. As will be discussed, the ALJ failed to follow the standard set forth above both at Step Three and Step Five of his analysis. Therefore, his decision cannot be affirmed. *See id.* at 986.

At Step Three, the ALJ found that plaintiff's impairment does not meet or equal a listed impairment. Plaintiff claims that his impairment meets the requirements of listing 12.04: Affective Disorders. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. The level of severity for these disorders required by the regulations "is met when the requirements in both A and B are satisfied." *Id.* The ALJ apparently conceded that plaintiff's impairment satisfies the requirements of 12.04(A),[3] as he skipped directly to finding that plaintiff does not meet the criteria of 12.04(B). To satisfy the requirements of 12.04(B), plaintiff's impairment must

---

**3.** Two nonexamining sources found that plaintiff satisfied 12.04(A). (*See* Tr. at 118.)

Result[ ] in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

*Id.*

Dr. Zikry had been treating plaintiff approximately every two weeks since approximately August of 1996, and diagnosed plaintiff with bipolar affective disorder and ADHD. He completed a report dated November 1, 1997 in which he opined that plaintiff is seriously limited in his abilities to: interact with supervisors, deal with work stresses, and maintain attention/concentration. (Tr. at 175–76.) Dr. Zikry also reported that plaintiff's attention and concentration are poor due to his ADHD and "manic like (sic) states," he generally has a low frustration tolerance and becomes easily stressed, he has a "bad temper," and "difficulty with authority figures." *Id.* at 176. Dr. Zikry also remarked that plaintiff at times may be "labile [and] act in [a] frustrated, impulsive way especially if stressed or pressured." *Id.* at 177. Finally, Dr. Zikry concluded that plaintiff has a questionable ability of continuing or maintaining steady work performance. *Id.*

Statements from others involved in plaintiff's treatment support Dr. Zikry's opinion. In a report of contact by the New York State Department of Social Services, one of plaintiff's caseworkers, Mr. Bob Steigerweld, reported that plaintiff lived in an apartment supported by Unity House, an agency which provides psycho-social and residential services. *Id.* at 109. Someone checks in with plaintiff every day, and Unity House links plaintiff with medical and educational services, handles plaintiff's money, and provides transportation to appointments which plaintiff cannot reach by bus or bicycle. *Id.* Mr. Steigerweld also reported that plaintiff "tends to be a loner" and has a short attention span. *Id.* at 110. A discharge summary completed by Linda Bonebrake from Conifer Park, a substance abuse treatment facility, stated that plaintiff's relapse stressors included: (1) difficulty taking directions from others, in particular those he sees as authority figures; (2) significant trust issues; and (3) difficulty handling anger. *Id.* at 155–56.[4]

Dr. Michael Thompson, a consulting physician, reported that, while plaintiff's mood was superficially pleasant, there was underlying evidence of dysphoria and irritability. *Id.* at 170–71. Dr. Thompson also noted that plaintiff "does present with evidence of significant functional incapacity to the point where his assigned case manager apparently provides ample help with his performing virtually every adult daily activity," *Id.* at 171, and that "without the help of the claimant's case manager, it is quite probable that he would be a high risk for relapse in terms of his alcohol and drug abuse and possibly a relapse of more florid bipolar symptoms including a possible full manic episode." *Id.* at 172. Finally, Dr. Thompson opined that plaintiff is not a good candidate for employment due to his psychiatric and substance abuse problems, and that should he receive benefits, he is unable to manage them in his own best interest. *Id.* at 172–73.

The ALJ never discussed Dr. Zikry's report in connection with his analysis of whether or not plaintiff's impairment meets or equals listing 12.04. The ALJ gave no indication of what weight, if any, he gave to Dr. Zikry's opinion. In addi-

---

**4.** Plaintiff's history of past substance abuse is not alleged as a basis for disability and was not determined to be a contributing factor material to plaintiff's alleged disability which would preclude an award of benefits. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

tion, as has been demonstrated above, Dr. Zikry's report indicates that plaintiff's impairment may satisfy the requirements of a listed impairment and is consistent with other substantial evidence in the record. This supports plaintiff's argument that controlling weight should have been given to Dr. Zikry's report. Therefore, the ALJ had a duty to explain the apparent lack of consideration he gave to the report.

Similarly, at Step Five, it is unclear what standard the ALJ used to weigh Dr. Zikry's opinion. The ALJ determined at Step Five that plaintiff retains the residual functional capacity to perform simple, low stress work. In connection with this assessment, the ALJ stated that Dr. Zikry's opinion is consistent with his conclusion based upon the fact that Dr. Zikry opined that plaintiff had good ability to understand, remember and carry out simple instructions. *Id.* at 18. However, not only did the ALJ fail to address whether or not Dr. Zikry's opinion was afforded controlling weight, he failed to mention several areas in which Dr. Zikry found that plaintiff was significantly limited. *See supra* p. 375–76. Thus, it appears that the ALJ simply chose the portions of Dr. Zikry's report that supported his conclusion, and ignored significant evidence which contradicted that conclusion.

Given the length of plaintiff's treatment with Dr. Zikry and the numerous statements throughout the record which are consistent with Dr. Zikry's findings, the ALJ failed to adequately explain his treatment of Dr. Zikry's report. Consequently, the ALJ failed to apply the proper legal standard to the opinion of plaintiff's treating physician.

### 2. *Using the Grids as a Framework*

When a claimant's impairment and related symptoms, such as pain, only impose exertional limitations and the claimant's vocational profile is listed in an Appendix 2

Rule, the Rule is applied directly to determine disability status. §§ 404.1569a(b), 416.969a(b). "The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa,* 168 F.3d at 78 (internal quotations omitted) (citation omitted). The grids then indicate whether the claimant can engage in any substantial gainful activity. *Id.* However, as in this case, where the limitations and restrictions are nonexertional only,[5] the rules in Appendix 2 do not direct factual conclusions of disabled or not disabled. Rather, the evaluation of disability "will be based on the principles in the appropriate sections of the regulations." §§ 404.1569a(c)(2), 416.969a(c)(2).

In the present case, the ALJ determined that plaintiff's nonexertional limitations did not significantly erode his occupational base. He then concluded that plaintiff was not disabled using the medical/vocational guidelines as a framework. In light of the ALJ's misapplication of the Treating Physician Rule and improper consideration of plaintiff's subjective complaints, *see infra* p. 14, there is a reasonable basis for doubting the ALJ's conclusion, and therefore his decision cannot be affirmed.

### 3. *Residual Functioning Capacity Standard of Review*

RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms. §§ 404.1545, 416.945. Age, education, past work experience, and transferability of skills are vocational factors to be considered. Physical abilities are determined by evaluation of exertional

---

**5.** Nonexertional limitations include "difficulty functioning because you are nervous, anxious, or depressed, difficulty maintaining attention or concentration, as well as difficulty understanding or remembering detailed instruction." 20 C.F.R. §§ 404.1569a(c)(1)(i)–(iii), 416.969a(c)(1)(i)–(iii).

and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. *Id.; see also* §§ 404.1567, 404.1569a, 416,967, 416.969a. Mental abilities are assessed by evaluation of the nature and extent of the claimant's mental limitations and restrictions, and then determining the residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(c), 416.945(c). "A limited ability to carry out certain mental activities such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the] ability to do past work and other work."*Id.* Claims that involve mental or emotional impairments require "a precise description of the plaintiff's past particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82–62, Soc.Sec.Rep.Serv., rulings 1975–82, 1982 WL 31386, at *4; *see Welch v. Chater,* 923 F.Supp. 17, 20 (W.D.N.Y. 1996).

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull, 20 C.F.R. §§ 404.1569a(a), 416.969a(a), as well as his/her nonexertional limitations. §§ 404.1569a(c)(vi), 416.969a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y. 1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Id.; Sullivan v. Secretary of Health & Human Servs.,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *Ferraris,* 728 F.2d at 588. The RFC is then used to determine particular types of work a claimant may be able to perform. §§ 404.1545(a), 416.945(a).

If the claimant can do work that exists in the national economy a finding of not disabled will be made. §§ 404.1566(b), 416.966(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.* "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." §§ 404.1566(a), 416.966(a). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. §§ 404.1566(b), 416.966(b).

In this case, the ALJ merely stated in his decision that plaintiff can do simple, low stress work. (Tr. at 15.) The ALJ did not provide a precise description of plaintiff's past work duties which likely caused him stress or tension, nor did he specify the functions which the plaintiff is still capable of performing, or describe with some specificity jobs that claimant can do despite his impairments. He also failed to present any evidence that such jobs existed in the national economy. Since the ALJ's analysis in these respects is insufficient, this case should be remanded for further development of the record.

### D. *The ALJ's Decision Is Not Supported By Substantial Evidence*

The ALJ found that plaintiff is capable of simple, low stress work. Plaintiff claims that in making this determination, the ALJ improperly rejected his subjective complaints concerning his functional limitations.

### 1. *The Credibility of Plaintiff's Subjective Complaints*

Throughout the evaluation process, the ALJ must consider subjective

complaints of pain and other symptoms. §§ 404.1529(a), (d), 416.929(a), (d). However, the ALJ is "not obliged to accept without question the credibility of such subjective evidence." *Marcus,* 615 F.2d at 27; *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). The ultimate question is whether the claimant's affliction did, given his physical and mental constitution, cause him symptoms which then became so severe to him that he is now unable to work. *Marcus,* 615 F.2d at 27.

There must be objective medical evidence which demonstrates that the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." §§ 404.1529(a), 416.929(a). If the medical evidence shows such an impairment, then the intensity and persistence of the claimant's symptoms must be evaluated so that a determination may be made regarding how the claimant's symptoms limit his/her capacity for work. §§ 404.1529(c), 416.929(c).

"Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his/her symptoms, including pain, must be considered. §§ 404.1529(c)(3), 416.929(c)(3). Relevant factors include: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment received to relieve symptoms; and (6) any other measures taken to relieve symptoms. §§ 404.1529(c)(3)(i)–(vi), 416.929(c)(3)(i)–(vi).

After weighing the objective medical evidence, the claimant's demeanor, other indicia of credibility, as well as any inconsistencies between the medical evidence and a claimant's subjective complaints, the ALJ may decide to disregard the claimant's subjective opinion with respect to the degree of impairment. *See* §§ 404.1529(c)(4), 416.929(c)(4); *Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985). An ALJ who rejects subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987).

The ALJ did consider plaintiff's complaints of: inability to work due to mental impairments including bipolar disorder, ADHD and phobias; inability to handle stress; and hard time concentrating and sitting still. (Tr. at 15.) The ALJ, relying on various factors, found these complaints not fully credible. However, in discrediting plaintiff's claims, the ALJ mischaracterized evidence in the record.

The ALJ noted that plaintiff lives alone, can dress himself, clean, and grocery shop. *Id.* at 17. However, the record reveals that plaintiff's apartment is supported by Unity House which also pays plaintiff's bills and telephones to check on plaintiff every day. The ALJ also remarked that plaintiff attends community college. *Id.* at 17. However, he fails to acknowledge that plaintiff had to reduce his course load because he was failing, and was told to see a Special Needs Counselor. Plaintiff also stated he does not do homework, he is unable to study, and has difficulty concentrating. *Id.* at 53.

The ALJ noted that there are gaps in plaintiff's treatment history as another reason to discount his credibility. The record shows that plaintiff was unable to receive continuous treatment for portions of time because he was incarcerated. Finally, the ALJ observed that plaintiff's "allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date" but his impairment did not prevent plaintiff from working then. *Id.* at 18. The ALJ failed to consider the fact that plain-

tiff was unable to maintain employment for more than a few months due to his mental illness. *Id.* at 46, 91.

Plaintiff's subjective claims are supported by other evidence in the record. His caseworker reported that plaintiff has a short attention span and he did not believe that plaintiff is able to work at the present time because plaintiff is not "focused enough" to maintain a job. *Id.* at 110. Dr. Thompson reported plaintiff's complaints of problems with affective control, depression, and feelings of inadequacy. *Id.* at 167. He also remarked that plaintiff's attention and concentration were generally good, but plaintiff exhibited some evidence of mild residual problems related to his history of ADHD. *Id.* at 169. Dr. Mark Tartar, a nonexamining physician, reported plaintiff's ongoing symptoms of depression, frustration, and irritability. *Id.* at 126. Finally, Dr. Zikry reported that plaintiff's attention and concentration were poor, and he becomes easily frustrated. *Id.* at 176.

In sum then, the ALJ's decision to reject plaintiff's subjective claims is not supported by substantial evidence.

## V. *CONCLUSION*

A remand is appropriate in this case because the record does not contain persuasive evidence of disability requiring reversal and award of benefits. However, the ALJ's decision is deficient in many respects. He failed to properly apply the legal standards applicable to treating physician's opinions and mischaracterized evidence in the record to discredit plaintiff's subjective claims. In addition, the ALJ failed to adequately describe the types of work plaintiff is capable of performing and the specific jobs in the national economy which suit plaintiff's RFC. Therefore, this matter should be remanded for reconsideration of Dr. Zikry's opinion and plaintiff's allegations concerning his functional limitations, and to further develop the record with respect to plaintiff's RFC.

Accordingly, it is

ORDERED, that the decision denying plaintiff disability benefits be REVERSED and REMANDED for further findings consistent with this opinion.

IT IS SO ORDERED.