**Tracie McCASKILL, on Behalf of Diijon T. HARRIS, Plaintiffs,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social**

Security,[1] Defendant.

No. 98–CV–5710 (FB).

United States District Court,
E.D. New York.

Aug. 13, 2001.

---

1. This action was originally brought against Kenneth S. Apfel ("Apfel") in his official capacity as Commissioner of Social Security. The Court has automatically substituted Larry G. Massanari as Apfel's successor pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Herbert S. Forsmith, New York City, for Plaintiffs.

Alan Vinegrad, United States Attorney, by Philip J. Miller, Assistant United States Attorney, Civil Division, Eastern District of New York, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff Tracie McCaskill ("McCaskill") brings this action on behalf of her son, Diijon T. Harris ("Diijon"), pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act") to review a final determination of the Commissioner of the Social Security Administration, (the "Commissioner"), denying an application for Supplemental Security Income Child Benefits ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies both motions and remands to the Administrative Law Judge ("ALJ") for further development of the record.

### I.

Since his birth on November 22, 1994, Diijon has experienced frequent asthma attacks requiring the daily administration of medication, and trips to the emergency room. On November 23, 1995, Diijon applied for SSI benefits due to his chronic bronchial asthma. Diijon's claim was denied initially, and upon reconsideration. Thereafter, Diijon requested a hearing with an ALJ. On September 27, 1999, after conducting a hearing and a review of the entire record, the ALJ denied the claim. Diijon requested an additional review by the Appeals Council, which was denied on August 11, 1998. Diijon timely filed this complaint on September 9, 1998.

### II.

■ The Court, in reviewing a decision denying benefits under the Social Security Act, must first determine whether the ALJ applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d

Cir.1999); *see also Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). Until August 22, 1996, a child was entitled to ("SSI") disability benefits if he suffered from a "medically determinable physical or mental impairment of comparable severity" to one that would disable an adult. 42 U.S.C. § 1382c(a)(3)(A) (1994). In 1996, the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") changed the standard governing child disability claims, replacing the "comparable severity" standard with one that focuses on whether a child has "marked and severe limitations." *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193 § 211(d)(1)(A)(ii), 110 Stat. 2105 (codified at 42 U.S.C. § 1382c). The 1996 standard applies to cases that had not yet been decided on August 22, 1996. *See* PRWORA, Pub.L. No. 104–193 § 116; *Quinones v. Chater,* 117 F.3d 29, 33 n. 1 (2d Cir.1997) (applying prior "comparable severity" standard due to timing of appeal but noting that Congress amended the definition of childhood disability effective August 22, 1996). Because Diijon's application was not decided until September 17, 1997, PRWORA governs.

A determination that a child has marked and severe limitations entitling him to disability benefits requires a three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If not, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is one that is more than a slight abnormality. *Id.* Finally, if the child's impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal in severity to a disability listed in the Listing of Impairments. *See* 20 C.F.R. § 416.924(c) (referring to 20 C.F.R.

Part. 404, Subpart P Appendix 1 (the "listings")). If all three requirements are met, and the disability duration requirement (twelve months) is met, the child will be found disabled. *See* 20 C.F.R. § 416.924(d).

An impairment meets the severity of a listing if it matches the precise definition in the listings. An impairment is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926(a). This requires the ALJ to compare the "symptoms, signs, and laboratory findings" of the claimant's impairment based on his or her medical records with "the corresponding medical criteria shown for any listed impairment." *Id.* If an impairment is not listed, or medically equivalent to a listing, an ALJ must assess its functional equivalence, i.e., "all functional limitations caused by [the] impairment." 20 C.F.R. § 416.926a(a). An impairment is functionally of " 'listing-level severity' if it causes marked limitations in two broad areas of functioning or extreme limitations in one such area." 20 C.F.R. § 416.925(b)(2). Extreme limitations in walking or talking are examples of severity in one specific function sufficient to support a determination of functional equivalence to a listing. *See* 20 C.F.R. § 416.926a(b)(1). If there are no limitations of specific functions, then the ALJ should consider the effects of the impairment on broad areas of development or functions. *See* 20 C.F.R. § 416.926a(b)(2). Among the areas of development to consider are cognition/communication; motor skills; socialization skills; personal hygiene and maintenance; and concentration, persistence or pace. 20 C.F.R. § 416.926a(c)(4). Marked and severe limitations may also result from episodic impairments (frequent illnesses or attacks, or by exacerbations and remissions), or long-term treatment or medication effects. 20

C.F.R. § 416.926a(b)(3). Finally, the ALJ must also consider the nature of the impairment, age of the claimant, ability to be tested based on age, whether the claimant needs help from others in order to perform any particular activity (e.g., dressing), and other relevant factors. 20 C.F.R. § 416.926a(c)(2).

In reviewing Diijon's claim for disability benefits the ALJ applied the above-mentioned three-pronged legal standard and found that the claimant (1) never performed substantial gainful activity; (2) had asthma, but not as it is defined as an impairment listed in the listings; and (3) did not have asthma to a degree that is medically equal to or functionally equal to an impairment listed in the listings. *See* R. at 14.[2] Based on these findings the ALJ concluded that Diijon's "impairments do not result in marked and severe functional limitations." *Id.* Although the ALJ used the correct legal standard in considering Diijon's application, the Court, nonetheless, must remand the case for the reasons that follow.

### III.

 Once it determines that the correct legal standard has been applied, a court must then determine whether the ALJ's conclusion was supported by substantial evidence. *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir.2000). Substantial evidence is "more than a mere scintilla" which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). In deciding whether the ALJ's conclusions are supported by substantial evidence, the Court first must be satisfied that "the claimant has had a full hearing

under [the] regulations and in accordance with the beneficent purposes of the Act." *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990). Furthermore, it is important that the ALJ consider the subjective complaints of the claimant regarding pain and other symptoms throughout the evaluation process. *See Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984); *Smith v. Apfel,* 69 F.Supp.2d 370, 378–79 (N.D.N.Y.1999). If the subjective testimony of a claimant is rejected, the ALJ must do so explicitly and "with sufficient specificity to permit intelligible plenary review of the record." *Williams v. Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988); *see also Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987). "It is not sufficient for the [ALJ] to make a single, conclusory statement." SSR 96–7p, 61 Fed.Reg. 34,483 at 34,484 (July 2, 1996) ("Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements"). If a district court reviewing a Social Security benefits determination requires additional evidence in order to perform its review function, it should remand the case. *See, e.g., Curry,* 209 F.3d at 124 (remanding to the district court with instructions to remand the matter to the Commissioner).

 In the present case, the ALJ explicitly stated that he "considered claimant's subjective complaints." R. at 14. He then specifically found, in a single, conclusory statement, that Diijon's "statements regarding the degree of functional limitations are not fully credible as they are not supported by the medical evidence of record or claimant's mother's statements." R. at 15. Although the ALJ refers several times to the appearance and testimony of the claimant, the extent to

---

**2.** "R." refers to the bound set of documents comprising the entire record of all prior proceedings.

which the ALJ directly examined Diijon, including whether Diijon ever testified, is entirely unclear from the record.

Notably, on August 14, 1997, the date of the hearing, Diijon was approximately thirty months old. The Court is hard-pressed to understand how any meaningful testimony of this young child was taken. Furthermore, no trial transcript has been produced nor are there any other papers included in the record showing that Diijon was questioned or made any statements on his own behalf. Having placed great weight on the testimony of this toddler (which may or may not have occurred), and finding that it lacked credibility, the ALJ has failed to explain or support his findings with any evidence, let alone any degree of specificity.

■ Furthermore, the ALJ failed adequately to discharge his heightened duty to develop the record. *See Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996) (because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record). This duty exists even when the claimant is represented by counsel, or as here, by a paralegal. *See Echevarria v. Sec'y of Health and Human Services,* 685 F.2d 751, 755 (2d Cir.1982) (stating that among the Commissioner's responsibilities is the duty to provide a claimant with a full and fair hearing in accordance with the beneficent purposes of the Act and the regulations promulgated thereunder).

In addition to failing to explain his reliance on testimony by Diijon, the ALJ's questioning of Diijon's mother regarding his attacks was inadequate. The following questions represent the totality of the inquiry by the ALJ:

[Q]: How does this problem affect his life?

[A]: Well, he can't—he cannot—he's limited because when he plays too hard or runs around too much, he goes into an attack, he can't breathe, he can't catch his breath, and I'm always running back and forth to the doctor with his allergies and his attacks or even to the hospital.

[Q]: And I assume he's taking some medication, is he not?

. . . . .

[A]: Yes.

[Q]: Does he eat pretty well?

[A]: Only when he gets sick with asthma he don't eat that much . . .

. . . . .

[Q]: And if we don't consider the attacks that he has, his activities are not restricted, is that correct? He runs around and plays?

[A]: If I see he's playing too hard I stop him—

[Q]: Right.

[A]:—because he'll go into one.

R. at 27.

By making the above cursory inquiry, and concluding summarily that Diijon did not suffer from a marked and severe limitation, the ALJ failed to make any specific findings regarding the listings or how Diijon's illness does not medically or functionally equal a listed impairment. There is no inquiry regarding the frequency of the attacks, or how often Diijon's mother intervened to prevent an attack at its onset. There are also no questions regarding how often she must stop him from playing too hard and the practicalities of how that restricts the normal activities of a young child. Instead, the ALJ focused his questions around Diijon's life excluding the attacks, without considering the efforts taken to elude the onset of an attack on a daily basis. In regards to broad or specif-

ic areas of functioning, the ALJ merely stated that Diijon's asthma "has had a mild limitation in his motor functioning ... [but] does not prevent him from playing and interacting ... [and] has improved with medication." R. at 15. The ALJ did not explicitly consider Diijon's cognition or communication; his socialization skills or ability to take care of himself; his concentration or persistence; or his age, ability to be tested, or need for help from others. Without a more extensive undertaking by the ALJ into the precise effect and nature of the illness and its repercussions, the Court finds that it is unable to ascertain whether the ALJ's determination is supported by substantial evidence.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is denied as is the plaintiff's motion for judgment on the pleadings. The Court remands the case for further development of the record.

**SO ORDERED.**